UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET HOOD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WHOLESOY & CO, MODESTO WHOLESOY COMPANY LLC, THE WHOLESOY COMPANY, TAN INDUSTRIES, INC., KEN NORDQUIST, AND TED NORDQUIST ,<br><br>Defendants. | Case No.: 12-cv-5550-YGR<br><br>**ORDER GRANTING WHOLESOY'S MOTION TO DISMISS** |

Pending before the Court is the Motion of Defendants Wholesoy & Co., Modesto Wholesoy Company LLC, The Wholesoy Company, Tan Industries, Inc., Ken Nordquist, and Ted Nordquist (collectively "Wholesoy") to Dismiss the class action complaint of Plaintiff Janet Hood. (Dkt. No. 12.) Plaintiff brings this putative class action alleging that Wholesoy's product labels do not comply with certain requirements of the federal Food, Drug, and Cosmetics Act ("FDCA"), as adopted by the California Sherman Law, Cal. Health & Safety Code section 109875, *et seq.* ("Sherman Law"). Based upon those violations, Plaintiff asserts claims under state and federal consumer protection statutes: the California Unfair Competition Law, Bus. & Prof. Code section 17200 *et seq.* ("UCL"); the California False Advertising Law, Cal. Bus. & Prof. Code section 17500 ("FAL"); the California Consumers Legal Remedies Act, Cal. Civ. Code section 1750 *et seq.* ("CLRA"); the Song-Beverly Consumer Warranty Act, Cal. Civ. Code section 1790 *et seq.* ("Song-Beverly"), and the Magnuson-Moss Warranty Act, 15 U.S.C. section 2301 ("Magnuson-Moss").

Plaintiff also alleges a state law claim for restitution based on unjust enrichment and quasi-contract. Wholesoy brings its motion under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on grounds of, among other things, abstention under the primary jurisdiction doctrine.

Having carefully considered the papers submitted and the pleadings in this action, based upon the record before the Court, and for the reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES THIS ACTION WITHOUT PREJUDICE** under the doctrine of primary jurisdiction.

## I. REQUEST FOR JUDICIAL NOTICE

As a preliminary matter, Wholesoy requests that the Court take judicial notice of sixteen documents. (Wholesoy's Request for Judicial Notice in Support of its Motion to Dismiss ("RJN"), Dkt. No. 13.) Plaintiff has not objected to Wholesoy's RJN.

Wholesoy's request for judicial notice therefore is **GRANTED** as to Wholesoy Exh. 1-13, and **DENIED** as to Wholesoy Exhibits 14, 15 and 16. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds in *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002). Exhibits 14 and 15 are letters *from* companies *to* the FDA concerning a proposed rule on Evaporated Cane Juice, not official documents directly relevant to the matters at issue. Likewise, Exhibit 16 is not directly referenced by or relevant to the complaint, and is improperly offered to prove the truth of facts stated therein.

Similarly, the Court **GRANTS** judicial notice as to Plaintiff's Exhibits 1-8 as proper subjects of judicial notice. *See* Fed. R. Evid. 201; *Batwin v. Occam Networks, Inc.,* No. CV 07–2750 CAS (SHX), 2008 WL 2676364, at *2 n. 3 (C.D.Cal. July 1, 2008) (taking judicial notice of letter from the SEC).

## II. SUMMARY OF ALLEGATIONS

Plaintiff alleges that Wholesoy's product labeling is false and misleading because:

(1) the labeling fails to list "sugar" or "dried cane syrup" as an ingredient, but instead lists "organic evaporated cane juice," in violation of FDA labeling rules; and

(2) Wholesoy's products fail to comply with the FDA standard of identity for "yogurt," 21 CFR § 131.200, in that they do not contain any form of milk defined therein. (Complaint, Dkt. No. 1, at ¶¶ 5-15.) Plaintiff alleges claims arising under California consumer protection statutes: a first cause of action for *unlawful* business practices under the UCL; a second cause of action for *unfair* business practices under the UCL; a third cause of action for *fraudulent* business practice under the UCL; a fourth claim under the FAL for *misleading and deceptive* advertising; a fifth cause of action for *untrue* advertising under the FAL; a sixth claim for violation of the CLRA for unlawful sale of misbranded products and misrepresentations regarding those product. Each of those claims is based, in turn, on Plaintiff's allegation that Wholesoy has violated multiple California Health & Safety Code sections which prohibit false or misleading statements on products and product packaging or labeling, as well as sale of misbranded food products. (Complaint ¶¶ 84-90.) Broadly, the first and fifth claims focus on the alleged falsity of the product labeling, the second, third, and fourth claims focus on the misleading aspect, and the sixth claim alleges both. In addition, she alleges an eighth and ninth claim for violation of federal and state consumer warranty statutes, as well as a claim for common law unjust enrichment/restitution.

Plaintiff alleges that she has purchased Wholesoy soy yogurt products since 2008. (Complaint ¶ 91.) She alleges that she read and reasonably relied on the labels of those products, including the listing of the ingredient "Organic Evaporated Cane Juice" and the representation that the products were "yogurt," before purchasing them. (Complaint ¶¶ 92-95.) Plaintiff alleges that these statements on Wholesoy's products were both: (1) unlawful, in that they did not comply with the applicable FDCA standards which are incorporated into California's Sherman Food, Drug and Cosmetic Act, California Health & Safety Code § 109875 *et seq.* (the "Sherman Law"); and (2) deceptive in that they misled Plaintiff and other similarly situated consumers into purchasing the products. Plaintiff alleges that she did not know and had no reason to believe that Wholesoy's products were misbranded and that she would not have bought the products if she had known the truth about them. (Complaint ¶¶ 96, 97.) She further alleges that Wholesoy's labeling, advertising and marketing were false and misleading and designed to increase sales. (Complaint ¶ 100.)

    **A.**    **"EVAPORATED CANE JUICE"**

With respect to the use of the term "Evaporated Cane Juice," Plaintiff alleges that the FDA issued guidance in October 2009, and has sent warning letters to companies, advising that the use of the term was unlawful. (Complaint ¶¶ 49, 51, 63, 65.) The guidance issued in October 2009 states that it is "Draft Guidance" that "Contains Nonbinding Recommendations," and is "Not for Implementation." (*See* Plaintiff's Opposition, Exhibit 6, "Guidance for industry: Ingredients Declared As Evaporated Cane Juice; Draft Guidance," Dkt. 17-7 [hereinafter "Draft ECJ Guidance"].) As a preamble to the statements therein, the Draft ECJ Guidance states that it:

> does not operate to bind FDA or the public. You can use an alternative approach if the approach satisfies the requirements of the applicable statues and regulations. If you want to discuss an alternative approach, contact the FDA staff responsible for implementing this guidance.

(Draft ECJ Guidance at 1.) The introduction states that:

> FDA's guidance documents, including this guidance, do not establish legally enforceable responsibilities. Instead, guidances [*sic*] describe the Agency's current thinking on a topic and should be viewed only as recommendations, unless specific regulatory or statutory requirements are cited. The use of the word should in Agency guidances means that something is suggested or recommended, but not required.

(Draft ECJ Guidance at 2.) The Draft ECJ Guidance then states that its intent

> is to advise the regulated industry of FDA's view that the term 'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'

(Draft ECJ Guidance at 3.)[1] The Draft ECJ Guidance explains that since the definition of juice is liquid coming from fruits and vegetables, and sugar cane is not considered a "vegetable" by the agency in this sense, sweeteners derived from sugar cane syrup should not be listed by names suggesting they are juice. "FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the

---

[1] FDA regulations require that manufacturers refer to foods by their "common or usual name." 21 C.F.R. § 101.4(a).

4

food and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups) as required by 21 CFR 102.5." Draft ECJ Guidance at 3.

On the other hand, the FDA has issued warning letters to companies listing "evaporated cane juice," as an ingredient notifying them that the FDA considers this to be a "violation" and stating that the "proper way to declare this ingredient can be found on the FDA website at: http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm181491.htm," a website link which led to the Draft ECJ Guidance. (*See* Plaintiff's Exhibit 8, FDA Warning Letter to Hail Merry, LLC, dated October 23, 2012 ["your product lists "Evaporated Cane Juice" in the ingredient statement; however, evaporated cane juice is not the common or usual name of any type of sweetener."]; Exhibit 9, FDA Warning Letter to Bob's Red Mill Natural Foods, dated July 31, 2012 [same].) The FDA's July 2012 Regulatory Procedures Manual indicates that a warning letter "communicates the agency's position on a matter," in and that "Warning Letters are issued only for violations of regulatory significance." (*See* http://www.fda.gov/downloads/ICECI/ComplianceManuals/RegulatoryProceduresManual/UCM 074330.pdf).

### B. "YOGURT"

Plaintiff alleges that in order for a product to call itself "yogurt," it must comply with the FDA's Standard of Identity for yogurt at 21 CFR § 131.200. Because Wholesoy's products labeled as "yogurt" do not contain the ingredients required by the FDA's Standard of Identity, namely any form of dairy milk, they are misbranded. (Complaint ¶¶ 9, 10, 73-77.)[2].

That regulation provides that "[y]ogurt is the food produced by culturing one or more of the optional dairy ingredients specified in paragraph (c) of this section with a characterizing bacterial culture that contains the lactic-acid producing bacteria, Lactobacillus bulgaricus and Streptococcus thermophilus." Instead, Wholesoy's products are plant-derived imitation products that have been developed and marketed in an effort to imply that the products contain the same nutritional quality

---

[2] Wholesoy points out that the packaging for the products here features prominent labels stating "MADE WITH ORGANIC SOYBEANS," "DAIRY FREE," "made from single source U.S. grown organic soybeans," and "VEGAN." (RJN Exh. 1-12.)

5

of dairy products. (Complaint ¶ 71.) Therefore, Plaintiff contends, the use of the word "yogurt" in the labeling of Wholesoy's products renders the product misbranded and is inherently misleading to the reasonable consumer. Plaintiff asserts that it is a violation of law to label a product as "yogurt" when the product does not meet the standard of identity for yogurt stated in 21 CFR § 131.200. More importantly, it misleads consumers to label products as "yogurt" when those products do not have the same nutritional value contained in a true yogurt product.

Plaintiff further alleges that the FDA has sent warning letters to companies using the term "milk" to describe soy-based products that fail to meet the appropriate standards for use of that term. (Complaint ¶¶ 50, 79.) The Complaint quotes from an FDA warning letter sent to Lifesoy, Inc. on August 8, 2008, which stated, in relevant part:

> Your LIFESOY® Natural Soymilk Unsweetened (1/2 gallon) and LIFESOY® Natural Soymilk Sweetened (1/2 gallon) products use the term "milk" as part of their common or usual name. Milk is a standardized food defined as the lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows [21 CFR 131.110]. Therefore, we do not consider "soy milk" to be an appropriate common or usual name because it does not contain "milk." We do consider "soy drink" or "soy beverage," however, as acceptable common or usual names for such products.

(Complaint, Exh. 1.) Plaintiff, in her opposition, cites additional FDA warning letters concerning labeling of products as "milk," "yogurt," or "cheese," that did not meet the applicable standards of identity. (Plaintiff's Oppo., Exhibit 1, FDA Warning Letter to Fong Kee Tofu Company, Inc., Exhibit 2, dated March 7, 2012 (ordering company to substitute "soy drink" or "soy beverage" for soy milk because the product contains no milk); Exhibit 3, FDA Warning Letter to Bunker Hill Cheese Company, Inc., dated January 2, 2001 (ordering company to remove label "French Yogurt Cheese" from product because yogurt is a food that is defined by a standard of identity, and the product did not meet the standard of identity); Exhibit 4, FDA Warning Letter to Cytosport, Inc., dated June 29, 2011 (ordering company to remove the word "milk" from label of "Muscle Milk" because the product contains no milk); Exhibit 5, FDA Warning Letter to Guggisberg Cheese, Inc., dated February 23, 2009 (ordering company to remove labels "Yogurt Cheese" and "Vegetable Yogurt Cheese" because the products do not meet the standard of identity for yogurt.) Plaintiff

contends these warning letters indicate that the FDA would not permit the use of the term "yogurt" in connection with "soy yogurt."

### III. ANALYSIS

Among other grounds, Wholesoy moves to dismiss or stay the Complaint based upon the doctrine of primary jurisdiction. Wholesoy argues that, because the FDA has regulatory authority over food labeling and the issues in this case require expertise or uniformity in administration, the Court should not "undermin[e], through private litigation, the FDA's considered judgments." *Pom Wonderful, LLC v. Coca-Cola Co.,* 679 F.3d 1170, 1178 (9th Cir. 2012).

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency… and is to be used only if a claim involves an issue of first impression or a particularly complicated issue Congress has committed to a regulatory agency." *Clark v. Time Warner Cable*, 523 F. 3d 1110, 1114 (9th Cir. 2008). A court traditionally weighs four factors in deciding whether to apply the primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech., Inc.,* 307 F.3d 775, 781 (9th Cir.2002) (amended). "[T]he doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark,* 523 F.3d at 1114. "Normally, if the court concludes that the dispute which forms the basis of the action is within the agency's primary jurisdiction, the case should be dismissed without prejudice so that the parties may pursue their administrative remedies." *Syntek*, 307 F.3d at 782; *Astiana v. Hain Celestial Grp., Inc.*, 905 F. Supp. 2d 1013, 1015 (N.D. Cal. 2012) (if doctrine applies, court can either stay proceedings or dismiss the case without prejudice.)

Thus, where determination of a plaintiff's claim would require a court to decide an issue committed to the FDA's expertise without a clear indication of how FDA would view the issue,

7

courts of this district have repeatedly found that dismissal or stay under the primary jurisdiction doctrine is appropriate. *See Astiana v. Hain Celestial,* 905 F. Supp. 2d. at 1016 (relying on *Pom Wonderful* to dismiss claims where the absence of FDA rules or policy statements would require court to make an independent determination that would "risk undercutting the FDA's expert judgments and authority"); *Ivie v. Kraft Foods Global, Inc.*, C-12-02554-RMW, 2013 WL 685372 at *7 (N.D. Cal. Feb. 25, 2013) (applying primary jurisdiction to dismiss one of several claims where particular issue was subject of proposed new regulation as to which FDA issued public notice and heard comments); *see also All One God Faith, Inc. v. Hain Celestial Grp., Inc.*, C 09-3517 SI, 2012 WL 3257660 (N.D. Cal. Aug. 8, 2012) (finding application of primary jurisdiction doctrine appropriate where claims "would inevitably require the [c]ourt to interpret and apply federal organic standards, potentially create a conflict with those standards, and would intrude upon and undermine the USDA's authority"); *Gordon v. Church & Dwight Co.*, No. 09-5585 SI, 2010 WL 1341184, at *2 (N.D. Cal. Apr. 2, 2010) (dismissing UCL, FAL, and CLRA claims on primary jurisdiction grounds where, *inter alia*, "the FDA has stated that it is still considering public comments and other data in connection with warnings similar to those that plaintiffs seek to have the court impose"); *Taradejna v. Gen. Mills, Inc.*, 909 F.Supp.2d 1128, (D. Minn. 2012) (dismissing complaint under primary jurisdiction doctrine where FDA had issued a proposed rule on precise subject at issue, and decision by court could undermine national uniformity in labeling regarding what met standard of identity for "yogurt"); *cf. Janney v. Mills*, C 12-3919 PJH, 2013 WL 1962360 (N.D. Cal. May 10, 2013) (finding question of abstention under primary jurisdiction doctrine "a close one" where FDA had expressed varying positions on question of the term "natural" in food labeling, but denying request to abstain where FDA had "repeatedly declined" to take a clear position and shown a "relative lack of interest" in doing so, such that deferral to FDA would likely be futile).

      The Court finds that the *Syntek* factors are met here and the primary jurisdiction doctrine applies. The FDA has regulatory authority over food labeling. *See* 21 U.S.C. § 341 *et seq.* The FDCA establishes a uniform federal scheme of food regulation to ensure that food is labeled in a manner that does not mislead consumers. *See* 21 U.S.C. § 341 *et seq.* Food labeling enforcement is

a matter that Congress has indicated requires the FDA's expertise and uniformity in administration. Congress amended the FDCA through the passage of the Nutrition Labeling and Education Act (NLEA) to "clarify and to strengthen" the FDA's "legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." H.R. Rep. No. 101-538, at 7, *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337. No state may "directly or indirectly establish. . . any requirement for the labeling of food that is not *identical* to the [FDCA]" 21 U.S.C. § 343-1(a) (emphasis supplied).

With respect to "evaporated cane juice," the Draft ECJ Guidance on which Plaintiff relies says expressly that it is not a "legally enforceable" standard, but only a suggestion. Given that statement, it is unclear why FDA subsequently has issued two warning letters citing that guidance. At a minimum, this indicates to the Court that the FDA's position is not settled. So far as it appears, FDA has not yet set a uniform enforcement standard. Thus, determination of Plaintiff's claim would require the Court to decide an issue committed to the FDA's expertise without a clear indication of how FDA would view the issue. *See Astiana v. Hain Celestial*, 905 F. Supp. 2d at 1016 (absence of FDA rules or policy statements regarding use of "natural" for cosmetics); *Ivie*, 2013 WL 685372 at *7 (dismissing serving size claim where new regulation was pending before FDA); *Taradejna*, 909 F.Supp.2d at 1135 (dismissing complaint regarding standard of identity for "yogurt" where a proposed FDA rule would address the issue directly, once finalized).

Plaintiff also cites to the district court's decision in *Ivie* as support for its contention that the Draft ECJ Guidance establishes the FDA standard applicable here. There Judge Whyte found that the Draft ECJ Guidance was *unenforceable*, though nevertheless relevant to the issue of whether the labels in question were deceptive or misleading. *Ivie*, 2013 WL 685372 at *12. Here, Plaintiff alleges that the use of the term "evaporate cane juice" is not merely misleading, but also is unlawful. Yet Plaintiff offers no authority to support the contention that use of that term is unlawful, whether under enforceable FDA/Sherman Law standards or any others.

Turning to the "yogurt" Standard of Identity, the FDA does not appear to have spoken at all as to whether "soy yogurt" should be subject to the same standards as dairy yogurt. It is not apparent to the Court whether the FDA would consider the addition of the word "soy" in front of

9

yogurt to mean that the product was subject to that same Standard of Identity or, like "butter" versus "peanut butter," subject to a completely different standard. *Cf.* 21 C.F.R. § 164.150 (regulatory definition of "peanut butter") and 21 U.S.C. § 321a (statutory definition of "butter"). Many products contain soy and the need for the FDA to administer a comprehensive approach is compelling. *See*, *e.g.*, 21 C.F.R. § 139.117 [references to macaroni products with soy]; 21 C.F.R. § 172.379 [soy beverages, soy-based butter substitutes; soy-based cheese substitutes].

While Plaintiff points to two warning letters indicating that an analogous product, soy milk, was considered misbranded by the FDA under the standards applicable to [dairy] "milk," this does not provide clear guidance for food producers or the Court. Because it is unclear whether 21 C.F.R. § 131.200 is intended to apply to "soy yogurt" products, the Court finds it appropriate to leave that decision to the FDA in the first instance.

Plaintiff argues that abstention is not required here because the issues presented do not require any scientific or nutritional expertise to resolve. Unlike *Taradejna*, no real scientific analysis is required to say whether the products are misbranded. In *Taradejna*, the claims involved a question of whether a Greek-style yogurt could appropriately include Milk Protein Concentrate, "a form of ultrafiltered milk that typically 'retain[s] all protein components of milk'" under the standard of identity for yogurt. *See Taradejna*, 909 F.Supp.2d at 1130 (quoting 70 Fed. Reg. 60751, 60752 (Oct. 19, 2005)). The court there dismissed the complaint, ruling that the "FDA is in the best position to resolve any ambiguity about the standard of identity for yogurt" and that the FDA can "ensure national uniformity in labeling, utilizing the Agency's special expertise in this regard." *Id.* at 1134, 1135. Plaintiff argues that this case has no such scientific complexity since all that the Court must decide is that "soy yogurt" has no milk, and "evaporated cane juice" is really just sugar. Plaintiff's appeal to the simplicity of the decision belies the fact that the FDA has not come to any clear conclusion regarding either issue. It also contradicts Plaintiff's allegations and arguments that labeling products as "yogurt" misleads consumers not simply because the products contain soy rather than dairy, but also because those products "do not have the same nutritional value" connoted by the use of the term "yogurt." (Plaintiff's Oppo. at 5:7-8; *see also* Complaint ¶¶ 71, 78.) In the absence of such a clear statement, should the Court go forward with consideration of

10

the Complaint, it would find itself in a position of either having no set standard to apply, or announcing a standard and thereby overstepping its proper role.

Under these circumstances, based upon the record presented, the Court finds it is appropriate to defer to the authority and expertise of the FDA to say what the appropriate rules should be with respect to "soy yogurt" and "evaporated cane juice."  Rendering a decision based on what this Court believes the FDA might eventually decide on either of these issues "would usurp the FDA's interpretive authority."  *Pom Wonderful*, 679 F.3d at 1176.  Deference in this case is the appropriate course.  *Pom Wonderful,* 679 F.3d 1170, 1176; *Clark,* 523 F.3d at 1114.  Therefore, the Court **ORDERS** that Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE.**[3]

This Order terminates Dkt. No. 12.

**IT IS SO ORDERED.**

Dated: July 12, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[3] Because the Court dismisses the claims on primary jurisdiction grounds, it does not reach the merits of Wholesoy's arguments for dismissal based upon preemption, lack of standing, or failure to state a plausible claim.

11